Michael Jason Lee, Esq. (State Bar No. 206110)
**LAW OFFICES OF MICHAEL JASON LEE, APLC**
4660 La Jolla Village Drive, Suite 100
San Diego, CA 92122
Tel: (858) 550-9984
Fax: (858) 550-9985
Email: michael@mjllaw.com

Timothy P. Dillon, Esq. (SBN 190839)
Sunjina K. Ahuja (SBN 226130)
**DILLON MILLER & AHUJA, LLP**
5872 Owens Avenue, Suite 200
Carlsbad, CA 92008
Telephone:   (858) 587-1800
Facsimile:    (858) 587-2587
Email: tdillon@dmalaw.com
Email: sahuja@dmalaw.com

Attorneys for Plaintiff,
Thomas H. Casey, Trustee of the
Zia Shlaimoun Ch. 7 Bankruptcy Estate

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA / SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>ZIA SHLAIMOUN,<br><br>Debtor.<br><br>___<br><br>THOMAS H. CASEY, Trustee of the Zia Shlaimoun Ch. 7 Bankruptcy Estate<br><br>Plaintiff,<br><br>vs.<br><br>HELEN SHLAIMOUN, an individual; NICO AKSEL LEOS SHLAIMOUN, an individual; OUSSHA SHLAIMOUN, an individual; AKSEL INGOLF OSTERGARD JENSEN, an individual; 328 BRUCE LLC, a limited liability company of unknown state of origin; 40355 LA QUINTA PALMDALE, LLC, a California limited liability company; GO GUM, LLC, a | Bankruptcy No.: 8:17-bk-10976-TA<br>Chapter: 7<br>Adversary No.:<br><br>**CHAPTER 7 TRUSTEE'S COMPLAINT AGAINST DEFENDANTS FOR:**<br><br>1) **Avoidance of an Actual Intent Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(A);**<br>2) **Avoidance of Constructive Fraudulent Transfer Under 11 U.S.C. §548(a)(1)(B);**<br>3) **Avoidance of Post-Petition Transfer Under 11 U.S.C. §549(a);**<br>4) **Avoidance of Preferential Transfer Under 11 U.S.C. §547;**<br>5) **Avoidance of Actual Intent Voidable Transaction Pursuant to** *Cal. Civ. Code* **§3439 et. seq.;**<br>6) **Avoidance of Constructive Fraud Voidable Transaction Pursuant to** *Cal. Civ. Code* **§3439 et. seq.; and**<br>7) **Recovery of Avoided Transfer Pursuant to 11 U.S.C. §550** |

Delaware limited liability company; GOLD STAR GROUP, LLC, a Delaware limited liability company; GOLD STAR HEALTH, LLC, a limited liability company of unknown state of origin; GOLDSTAR LABORATORIES LLC, a Delaware limited lability company; GOLDSTAR LABORATORIES MISSOURI, LLC, a Missouri limited liability company; JENSEN INVESTMENT GROUP, LLC a California limited liability company; NEW ERA VALET LLC, a limited liability company of unknown state of origin; and ZUMAONE, LLC, a California limited liability company;

Defendant.

Plaintiff Thomas H. Casey, Trustee of the Zia Shlaimoun Ch. 7 Bankruptcy Estate ("Plaintiff"), alleges as follows:

### STATEMENT OF JURISDICTION AND VENUE

1. The Bankruptcy Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§157 and 1334, and Federal Rule of Bankruptcy Procedure 7001.

2. This adversary proceeding arises out of and is related to the bankruptcy case entitled *In re Zia Shlaimoun,* 8:17-bk-10976-TA commenced on March 15, 2017, ("Petition Date") in the United States Bankruptcy Court for the Central District of California, Santa Ana Division.

3. Pursuant to the requirements as set forth in Rule 7008 of the Federal Rules of Bankruptcy Procedure, Plaintiff states her consent to the entry of a final order or judgment of this Court.

4. Venue properly lies in this judicial district, in that this civil proceeding arises under Title 11 of the United States Code as provided in 28 U.S.C. §1409.

### STATEMENT OF STANDING

5. The Trustee, as the duly appointed, qualified and acting trustee of the bankruptcy estate of *In re Zia Shlaimoun* ("Estate"), has standing to bring this action.

### PARTIES TO THE ACTION

6. The Plaintiff is the duly appointed qualified and acting trustee of the Estate.

7. Defendant, Helen Shlaimoun, is the mother of the Debtor, Zia Shlaimoun ("Shlaimoun" or "Debtor") and has resided in both the United Kingdom and Orange County, California during the relevant time period.

8. Defendant, Nico Aksel Leos Shlaimoun ("Nico Shlaimoun"), is the adult son of the Debtor, and has at all times relevant to this Complaint resided in the State of California, either in the County of Los Angeles or County of Orange.

9. Defendant, Oussha Shlaimoun, is the wife of the Debtor, and she has at all times relevant to this Complaint resided in the State of California, either in the County of Los Angeles or County of Orange.

10. Defendant, Aksel Ingolf Ostergard Jensen ("Aksel Jensen"), is the father-in-law of the Debtor, and has resided in both the United Kingdom and Orange County, California during the relevant time period.

11. The Defendants enumerated at paragraphs 7-10 shall be referred to herein as the "Family Defendants".

12. Defendant, 328 Bruce LLC, is a limited liability company of unknown state of origin.

13. Defendant, 40355 La Quinta Palmdale LLC, is a California limited liability company.

14. Defendant, Go Gum, LLC, is a Delaware limited liability company.

15. Defendant, Gold Star Group LLC, is a Delaware limited liability company.

16. Defendant, Gold Star Health, LLC, is a limited liability company of unknown state of origin.

17. Defendant, Goldstar Laboratories LLC, a Delaware limited liability company.

18. Defendant, Goldstar Laboratories Missouri LLC, is a Missouri limited liability company.

19. Defendant, Jensen Investment Group, LLC, is a California limited liability company. Plaintiff is informed and believes, and thereon alleges, that Jensen Investment Group is wholly owned Aksel Jensen.

20. Defendant, New Era Valet LLC, is a limited liability company of unknown state of origin.

21. Defendant, Zumaone, LLC, is a California limited liability company.

22. Defendants enumerated in paragraph 12-21 above shall collectively be referred to as the "Alter Ego Entities".

23. All Defendants are "insiders" to Debtor as that term is defined by 11 U.S.C. §101(31).

24. All Defendants shall collectively be referred to as "The Defendants".

///
///
///
///

# GENERAL ALLEGATIONS

## ALTER EGO ALLEGATIONS

25. The Alter Ego Entities were sham entity formed and wholly owned by the Debtor, with the exception of Goldstar Laboratories LLC, which was 50% owned by Debtor. Shlaimoun utilized the corporate coffers of the Alter Ego Entities to pay his personal expenses.

26. From the time period beginning in late 2014 up until 2018 or later, Shlaimoun shamelessly funneled in excess of $1,000,000 through the Alter Ego Entities and utilized their funds to pay for myriad personal expenses, including (by way of select example) gym memberships, food – including various restaurants, entertainment/hobbies, his son's college tuition, legal expenses on matters unrelated to the Alter Ego Entities, to pay his family members a litany of other expenses wholly unrelated to any legitimate business purpose. Shlaimoun systematically utilized these Alter Ego Entities to shield his assets from creditors. He would transfer funds to and amongst these Alter Ego Entities to make the tracking of his funds difficult to trace and markedly more difficult to collect on.

27. Shlaimoun also utilized the Alter Ego Entities to hold large amounts of cash that he could then, in turn, give to his family members to hold.

28. The Alter Ego Entities are the alter ego of Shlaimoun. The Trustee is informed and believes and thereon alleges that the recognition of the privilege of separate existence of the Alter Ego entities would promote injustice because, Shlaimoun, in bad faith dominated and controlled the Alter Ego Entities, and its funds by engaging in the following:

    a. Shlaimoun commingled company funds and used company monies for his own personal expenses;

    b. Shlaimoun transferred funds to Alter Ego Entities, primarily for non-business purposes, but rather, for the purpose of shielding his money from creditors' collection efforts;

    c. Shlaimoun routinely disregarded corporate formalities; and

    d. Shlaimoun utilized the Alter Ego Entities as scam entities to pay his personal expenditures and debts.

29. Because the Alter Ego Entities are the alter egos of Shlaimoun and Shlaimoun largely funded the entity with his own assets and paid his own personal expenses with Alter Ego Entities' funds, the funds of the Alter Ego Entities should be regarded as funds of the Debtor and the Alter Ego Entities as a mere extension of Shlaimoun.

## BACKGROUND ALLEGATIONS

### The Family Defendants

30. The Family Defendants were utilized as shills by Shlaimoun. Over a period of years, Shlaimoun funneled in excess of $1,000,000 through his immediate family members to shield his cash assets from creditors. Shlaimoun would regularly transfer funds to the Family Defendants who would, in turn, hold funds on his behalf or direct the Family Defendants on the manner in which the funds should be expended. These funds were held by the Family Defendants for the sole purpose of helping Debtor evade creditors and their concomitant collection efforts.

31. **Helen Shlaimoun** – From the time period beginning in or around the early part of 2015 and continuing into 2018 or later, Helen Shlaimoun received at least eight transfers totaling more than $700,000 from Debtor's accounts and/or from accounts the Debtor owned and/or controlled. These transfers shall be referred to herein as the "Helen Shlaimoun Transfers".

32. **Oussha Shlaimoun** – From the time period beginning in or around the latter part of 2014, Oussha Shlaimoun received at least three transfers totaling more than $550,000 from Debtor's accounts and/or from accounts the Debtor owned and/or controlled. These transfers shall be referred to herein as the "Helen Shlaimoun Transfers". The transfers to Oussha Shlaimoun shall collectively be referred to as the "Oussha Shlaimoun Transfers"

33. **Nico Shlaimoun** – From the time period beginning in or around the latter part of 2014 and continuing into 2018 or later, Nico received at least $818,000 of Debtor funds deposited by the Debtor and/or deposited at the direction of the Debtor *vis-à-vis* a minimum of 10 separate transactions. These transfers shall collectively be referred to as the "Nico Shlaimoun Transfers".

34. **Aksel Jensen** – From the time period beginning in or around the early part of 2015 and continuing into 2018 or later, Aksel Jensen received a minimum of $25,000 of Debtor funds. The transfers of monies to Aksel Jensen shall be referred to as the "Aksel Jensen Transfers".

35. **328 Bruce LLC** – From the time period beginning in or around the latter part of 2015, 328 Bruce, LLC received a minimum of $33,000 of Debtor's funds. The transfers of monies to 328 Bruce, LLC shall collectively be referred to as the "328 Bruce, LLC Transfers".

36. **40355 La Quinta Palmdale LLC** – From the time period beginning in or around the early part of 2015, La Quinta Palmdale, LLC received a minimum of $175,000 of Debtor funds. These transfers shall collectively be referred to as the "La Quinta Palmdale, LLC Transfers".

37. **Go Gum, LLC** – From the time period beginning in 2017, Go Gum, LLC received a minimum of $50,000 of Debtor funds. The transfers of monies to Go Gum, LLC shall collectively be referred to as the "Go Gum, LLC Transfers".

38. **Gold Star Group LLC** – From the time period beginning in or around the early part of 2015 and continuing into the latter part of 2016 or later, Gold Star Group, LLC received a minimum of two transfers of Debtor's funds from the Debtor's account and/or from accounts the Debtor owned and controlled. These transfers were in excess of $650,000. These transfers shall be referred to herein as the "Gold Star Group, LLC Transfers".

39. **Gold Star Health, LLC** – From the time period beginning in the latter part of 2015 and continuing into the latter part of 2017, Gold Star Health, LLC received a minimum of $315,000 of Debtor's funds. The transfers of monies to Gold Star Health, LLC shall collectively be referred to as the "Gold Star Health, LLC Transfers".

40. **Goldstar Laboratories LLC** – In or around the latter part of 2015 and continuing into 2017, Gold Star Laboratories, LLC received a minimum of $415,000 of Debtor's funds. These funds were received *vis-à-vis* a minimum of seven transfers and shall collectively be called the "Goldstar Laboratories, LLC Transfers".

41. **Goldstar Laboratories Missouri LLC** – In December 2015 and continuing into 2017, Goldstar Laboratories Missouri, LLC received a minimum of $50,00 of Debtor's funds. The transfers of monies to Goldstar Laboratories Missouri, LLC shall be collectively referred to as the "Goldstar Laboratories Missouri, LLC Transfers".

42. **Jensen Investment Group, LLC** – From the time period beginning in 2016, Jensen Investment Group, LLC received a minimum of $25,000 of Debtor funds. The transfers of monies to

Jensen Investment Group, LLC Jensen shall be referred to as the "Jensen Investment Group, LLC Transfers".

43. **New Era Valet LLC** – In December 2015, New Era Valet LLC received a minimum of $26,000 *vis-à-vis* a minimum of two separate transfers. The transfer of funds to New Era Valet LLC shall be collectively referred to as the "New Era Valet LLC Transfers".

44. **Zumaone, LLC** – Beginning in the latter part of 2014 or the first part of 2015, and continuing into 2017, Zumaone, LLC received more than $200,000 of Debtor's funds. The transfers of monies to Zumaone, LLC shall be collectively referred to as the "Zumaone, LLC Transfers".

45. The Helen Shlaimoun Transfers; Oussha Shlaimoun Transfers; Nico Shlaimoun Transfers; Aksel Jensen Transfers; 328 Bruce LLC Transfers; 40355 La Quinta Palmdale LLC Transfers; Go Gum, LLC Transfers; Gold Star Group LLC Transfers; Gold Star Health, LLC Transfers; Goldstar Laboratories LLC Transfers; Goldstar Laboratories Missouri LLC; Jensen Investment Group LLC Transfers; New Era Valet LLC Transfers; and Zumaone, LLC Transfers shall collectively be referred to as the "Transfers".

**FIRST CLAIM FOR RELIEF**

**(For Avoidance of Transfers Based On Debtor's Actual Intent to**

**Defraud Per 11 U.S.C. § 548(a)(1)(A) Against All Defendants)**

46. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

47. The Debtor made the Transfers to The Defendants with the actual intent to hinder, delay or defraud creditors of this Estate.

48. The Transfers were Transfers of the Debtor's property.

49. The Debtors originally filed schedules that did not disclose the Transfers.

50. The Transfers occurred within two years prior to the Petition Date.

51. The Transfers occurred when the Debtor had existing creditors, had been sued and was being personally sued.

52. The value of the consideration received by the Debtor in exchange for the Transfers was not reasonably equivalent to the value of the property transferred.

53. The Debtor was insolvent at the time of the Transfers or became insolvent shortly after the Transfers were made.

54. The Transfers occurred shortly before or shortly after a substantial debt was incurred by the Debtor.

55. At the time of the Transfers, the Debtor's obligations were beyond the Debtor's ability to pay his debts.

56. By reason of the foregoing, the Plaintiff is entitled to avoid the Transfers pursuant to 11 U.S.C. §548(a)(1)(A).

## SECOND CLAIM FOR RELIEF

### (For Avoidance of Transfer Based on Constructive Fraudulent Transfer Pursuant to 11 U.S.C. §548(a)(1)(B) Against All Defendants)

57. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

58. The Debtor received less than reasonably equivalent value in exchange for the Transfer to The Defendants.

59. Shortly after the Transfers, the Debtor incurred debts that were beyond the Debtor's ability to pay as such debts matured.

60. By reason of the foregoing, the Plaintiff is entitled to avoid the Transfers pursuant to 11 U.S.C. §548(a)(1)(B).

## THIRD CLAIM FOR RELIEF

### (For Avoidance of Transfers Based on Preferential Transfer Pursuant to 11 U.S.C. §547 Against All Defendants)

61. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

62. To the extent the Court finds the existence of an antecedent debt owing by the Debtor to any of The Defendants, the Plaintiff is informed and believes and therefore alleges that the Transfers are avoidable as preferential transfers per 11 U.S.C. §547.

63. A portion of the Transfers were within one year before the Petition Date. A portion of the Transfers were within 90 days of the Petition Date.

64. The Plaintiff is informed and believes and thereon alleges that the Transfers were for the benefit of The Defendants.

65. The Transfers were made while the Debtor was insolvent.

66. The Transfers caused The Defendants to receive more on account of its debt than if Debtor's case was under Chapter 7 of the Bankruptcy Code.

67. By reason of the foregoing, the Trustee is entitled to avoid the Transfers pursuant to 11 U.S.C. §547.

## FOURTH CLAIM FOR RELIEF

**(For Avoidance of a Post-Petition Transfer Under 11 U.S.C. §549(a)**

**Against All Defendants)**

68. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

69. The Plaintiff is informed and believes and thereon alleges that the Debtor transferred property of the Estate, i.e. a portion of the funds in the Transfers to The Defendants, after the Petition Date.

70. The Transfers were not approved by the Plaintiff nor authorized by the Bankruptcy Court.

71. By reason of the foregoing, the Plaintiff is entitled to avoid the Transfers that took place after the Petition Date.

## SIXTH CLAIM FOR RELIEF

**(For Avoidance of A Voidable Transaction Pursuant to *Cal. Civ. Code* §3439 *et seq*.**

**Against All Defendants)**

72. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

73. Under 11 U.S.C. §544, a trustee steps into the shoes of a creditor of the estate and may avoid any transfer of property of an interest of the debtor in property that is voidable under applicable

law by a creditor holding an unsecured claim. Under California state law, the applicable law for voidable transactions are codified under *Cal. Civ. Proc.* §3439 *et seq*.

74. The Plaintiff is informed, believes and therefore alleges that prior to the Petition Date, but within four (4) years of the Petition Date, the Debtor transferred cash to The Defendants *vis-à-vis* the Transfers.

75. The Debtor made the Transfers to the Defendants for with the actual intent to hinder, delay or defraud creditors of this Estate.

76. The value of the consideration received by the Debtor in exchange for the Transfers was not reasonably equivalent to the value of the Transfers.

77. The Plaintiff is informed and believes and thereon alleges that the Transfers occurred shortly before or shortly after a substantial debt was incurred by the Debtor.

78. The Plaintiff is informed and believes and thereon alleges that at the time of the Transfers, the Debtor's obligations were beyond the Debtor's ability to pay his debts.

79. The Plaintiff is informed and believes and thereon alleges that nothing was received by the Debtor in exchange for the Transfers.

80. Creditors existed at the time of the Transfers who still existed on the Petition Date.

81. By reason of the foregoing, the Plaintiff is entitled to avoid the Transfers.

## SIXTH CLAIM FOR RELIEF

**(Recovery of Avoided Transfer Pursuant to 11 U.S.C. §550 Against All Defendants)**

82. Plaintiff incorporates each and every preceding allegation set forth above as though set forth in full herein.

83. Pursuant to 11 U.S.C. §550, to the extent that a transfer is avoided under 11 U.S.C. §§ 544, 548 and 549, the Trustee may recover, for the benefit of the Estate, the property transferred, or if the court so orders, the value of such property from the initial transferee of such transfer or the entity for whose benefit such transfer was made.

84. With respect to the Transfers, The Defendants are the transferees within the meaning of 11 U.S.C. §550.

85. The Plaintiff requests a judgment for the recovery of the Debtor's monies.

## RESERVATION OF RIGHTS

86.    Plaintiff hereby specifically reserves the right to bring any and all other causes of action that it may maintain against Transferee including, without limitation, causes of action arising out of the same transaction(s) set forth herein, to the extent discovery in this action or further investigation by Trustee reveals such further causes of actions.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, prays for judgment as follows:

1.    Avoidance and recovery of the Transfers.

2.    An award of costs and disbursements incurred by Plaintiff in this action; and

3.    An award of such other relief as may be just and proper.

Dated: March 14, 2019          **LAW OFFICES OF MICHAEL JASON LEE, APLC**

By: */s/ Michael Jason. Lee, Esq.*
Michael Jason Lee, Esq.
*Attorney for Plaintiff,*
*Thomas H. Casey, Trustee of the*
*Zia Shlaimoun Ch. 7 Bankruptcy Estate*